| | |
|---|---|
| 1 | |
| 2 | |
| 3 | |
| 4 | |
| 5 | |

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | | |
|---|---|---|
| United States of America, | ) | |
|   Plaintiff, | ) | CR 08-418-TUC-RCC (JCG) |
|   | ) | |
| vs. | ) | **REPORT & RECOMMENDATION** |
|   | ) | |
| Israel Gaxiola-Burboa, | ) | |
|   | ) | |
|   Defendant. | ) | |
|   | ) | |

Pending before are two Motions to Suppress filed by Defendant Israel Gaxiola-Burboa on July 15, 2008: a Motion to Suppress Evidence and a Motion to Suppress Statement. (Doc. Nos. 18 & 19.)  The United States filed responses to the Motions and Defendant replied. (Doc. Nos. 26, 27, 28.)

This matter came before the Court for a report and recommendation as a result of a referral made on March 6, 2008, pursuant to LRCrim 5.1. (Doc. No. 4.)  This matter was set for evidentiary hearing and evidence was heard on August 19, 2008.  Defendant, who remains in custody at this time, was present and represented by counsel.  This matter was submitted following oral argument at the conclusion of the hearing and taken under advisement.

Having now considered the matter, the Magistrate Judge recommends that the District Court, after its independent review, DENY Defendant's Motion to Suppress Evidence and DENY Defendant's Motion to Suppress Statement.

## FACTUAL FINDINGS[1]

On March 3, 2008, at about 6:42 a.m., Tohono O'Odham police officer T.D. Johnson was on patrol near milepost 1.5 on Federal Route 24 in the Tohono O'Odham Nation. Johnson noticed a truck with a camper shell traveling westbound. He had seen the same truck around midnight traveling eastbound. Officer Johnson conducted a license plate check on the vehicle and discovered that the plate did not match the description of the vehicle. He followed the vehicle to a local residence.

As Officer Johnson approached the residence, he observed Johnny Lopez standing near the front door. He approached Lopez and asked if Lopez was the driver of the vehicle. Lopez replied that he was not the driver and that the driver had run away. Officer Johnson asked Lopez to accompany him to the truck. Officer Johnson discovered Defendant Gaxiola-Burboa and 142 kilograms of marijuana in the bed of the truck.

Gaxiola-Burboa was transferred to the ICE station in Sells. At around 9:47 a.m., Drug Enforcement Agent Ricardo Perez gave Gaxiola-Burboa his *Miranda* warnings in Spanish. Agent Perez testified that Gaxiola-Burboa indicated that he understood his rights and agreed to waive them. Gaxiola-Burboa signed a form written in Spanish indicating that he understood his rights and wished to waive them. On cross-examination, Gaxiola-Burboa testified that Agent Perez read his *Miranda* rights to him and that Gaxiola-Burboa understood his rights. He also testified that he read and signed the waiver form indicating that he wished to waive his rights. He testified that although he understood his rights, he was sleepy, hungry and nervous and was arrested in a situation that he'd never been in before.

---

[1] The factual findings pertaining to Defendant's Motion to Suppress Evidence - *ie.* those events occurring before the Defendant's arrest - are derived from the factual allegations contained in the pleadings. No evidence related to the Motion to Suppress Evidence was admitted at the evidentiary hearing because the Court found at the outset, based on the allegations in the pleadings, that Defendant lacked standing as a matter of law. (Doc. No. 29.) Defendant did not allege any additional facts which would confer standing, rather Defendant asserted a change in the law regarding standing.

1   Gaxiola-Burboa testified that he explained to Agent Perez that he did not have any experience "with crimes" and asked Agent Perez if he could give him some help and advice and tell him what would be the best thing to do. According to Gaxiola-Burboa, Agent Perez told him that the more Gaxiola-Burboa told him, the more Agent Perez would be able to help Gaxiola-Burboa. Gaxiola-Burboa also testified that Agent Perez stated that he would attend court with Gaxiola-Burboa and try to help him.

Agent Perez testified that he did not threaten Gaxiola-Burboa or force him to waive his rights. Agent Perez denied telling Gaxiola-Burboa that the more he said, the more the agent could help. Although on direct examination Agent Perez testified that he told Gaxiola-Burboa that it was completely Gaxiola-Burboa's decision whether or not to waive his rights, Perez clarified on cross-examination that he did not make that exact statement to Gaxiola-Burboa, but believed such a statement was implied in the reading of the waiver of rights form.

The interview was not taped. No other persons were present during the interview. According to the parties' filings, during the interview Gaxiola-Burboa told Agent Ricardo Perez that he had backpacked marijuana into the United States in exchange for transport to Mesa, Arizona.

Gaxiola-Burboa testified that he lives in Ojito, Mexico, where he works in the fields. He completed schooling through the sixth grade. Gaxiola-Burboa testified that he was previously arrested by Immigration but sent back to Mexico without prosecution. He also testified that he knew it was illegal to transport marijuana into the United States and that if he was caught he would be arrested and questioned.

## ANALYSIS

In his Motion to Suppress Evidence, Gaxiola-Burboa contends that Officer Johnson lacked probable cause to search the vehicle, and therefore Gaxiola-Burboa's arrest was the fruit of an illegal search. In his Motion to Suppress Statement, Gaxiola-Burboa argues that his admission to backpacking marijuana was involuntary because Agent Perez improperly

influenced Gaxiola-Burboa by telling him that Gaxiola-Burboa would help himself by waiving his right to an attorney and talking to the agents without an attorney present.

**1.     Motion to Suppress Evidence**

The government argued, and the Court agrees, that Gaxiola-Burboa does not have standing to challenge the search of the vehicle. The Fourth Amendment provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." Because the Fourth Amendment protects "people, not places," *see Katz v. United States*, 389 U.S. 347, 351 (1967), a person claiming a Fourth Amendment violation must, as an initial matter, demonstrate a "legitimate expectation of privacy" in the place searched or the thing seized. *Rakas v. Illinois*, 439 U.S. 128, 143 (1978). A person who is aggrieved by an illegal search and seizure only through the introduction of damaging evidence secured by a search of a third person's premises or property has not had any of his Fourth Amendment rights infringed. *See Alderman v. United States*, 394 U.S. 165, 174 (1969). A passenger of a vehicle, who has not asserted a property or possessory interest in the vehicle, nor an interest in the property seized, does not have a reasonable expectation of privacy in the vehicle, and cannot challenge the search. *See Rakas*, 439 U.S. at 148.

Defendant does not challenge the authority of the above-stated law. Rather, Defendant claims that the law has been modified and that he has standing to challenge the search of the vehicle pursuant to *Brendlin v. California*, ___ U.S. ___, 127 S.Ct. 2400 (2007). In *Brendlin,* the Supreme Court addressed the narrow issue of whether a traffic stop subjects a passenger, as well as the driver, to Fourth Amendment seizure. In that case, the court specifically noted that the defendant "did not assert that his Fourth Amendment rights were violated by the search of [a co-defendant's] vehicle, *cf. Rakas v. Illinois*, 439 U.S. 128, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978), but claimed only that the traffic stop was an unlawful seizure of his person." In contrast, in the present case, Gaxiola-Burboa was a passenger in the bed of the truck. There was no stop of the vehicle and Gaxiola-Burboa challenges only the search of that truck. Thus, *Brendlin* is inapplicable.

1   Gaxiola-Burboa has not asserted a possessory interest in the vehicle or the marijuana
2   discovered in the vehicle.[2]  Accordingly, Gaxiola-Burboa does not have a reasonable
3   expectation of privacy in the vehicle and does not have standing to challenge the search.  It
4   is therefore "unnecessary to decide whether the search of the car might have violated the
5   rights secured to someone else by the Fourth and Fourteenth Amendments to the United
6   States Constitution." *Rakas*, 439 U.S. at 150.

**2.     Motion to Suppress Statements**

A defendant's constitutional rights are violated if his confession is obtained in violation of his *Miranda* rights or if coercive interrogation tactics render the confession involuntary. *See Dickerson v. United States*, 530 U.S. 428, 432 (2000).

*Miranda v. Arizona*, 384 U.S. 436 (1966), and its progeny govern the admissibility of statements made during custodial interrogation in both state and federal proceedings. Statements made while a defendant is in "custody or otherwise deprived of [his] freedom of action in any significant way" which are not preceded by *Miranda* warnings are inadmissible in evidence. *Id.* at 444.  For incriminating statements obtained during a custodial interrogation to be admissible, any waiver of *Miranda* rights must be voluntary, knowing, and intelligent. *See Miranda*, 384 U.S. at 479.  A waiver of *Miranda* rights "is knowing and intelligent if, under the totality of the circumstances, it is made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it." *United States v. Rodriguez-Preciado*, 399 F.3d 1118, 1127 (9th Cir. 2005) (citations and quotations omitted). There is a presumption against waiver, and the Government bears the burden of proving a valid waiver by a preponderance of the evidence. *See Colorado v. Connelly*, 479 U.S. 157, 168 (1986); *United States v. Bernard S.*, 795 F.2d 749, 751 (9th Cir.1986).

---

[2] Even if Gaxiola-Burboa had argued that he had a possessory interest in the marijuana, asserting only an interest in drugs seized does not confer standing. *See Rawlings v. Kentucky*, 448 U.S. 98, 105 (1980).

- 5 -

In considering the totality of the circumstances, factors to consider include the presence of any police coercion, the length of the interrogation, its location and its continuity, whether the police advised the suspect of his rights, and whether there were any direct or implied promises of a benefit. *Clark v. Murphy*, 331 F.3d 1062, 1072 (9th Cir. 2003). To be knowing and intelligent, "the waiver must have been made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it." *Moran v. Burbine*, 475 U.S. 412, 421 (1986). "In short the true test of admissibility is that the confession is made freely, voluntarily, and without compulsion or inducement of any sort." *Haynes v. State of Washington*, 373 U.S. 503, 513-14 (1963). An officer who attempts to pressure a defendant into changing his mind about remaining silent, and into talking without counsel to his interrogators, violates that defendant's Fifth Amendment rights. *See Collazo v. Estelle*, 940 F.2d 411, 419-20 (9th Cir. 1991).

Even when the procedural safeguards of *Miranda* have been satisfied, a defendant is deprived of due process if his conviction is founded upon an involuntary confession. *See Dickerson*, 530 U.S. at 432. To ensure due process, the test for determining the voluntariness of a suspect's confession is whether, considering all the circumstances, the government obtained the statement by physical or psychological coercion or by inducement so that the suspect's will was overcome. *See United States v. Coutchavlis*, 260 F.3d 1149, 1158 (9th Cir.2001) (citing *Haynes v. Washington*, 373 U.S. 503, 513-14 (1963)). Additionally, "[a] statement is involuntary if it is extracted by any sort of threats or violence, [or] obtained by any direct or implied promises, however slight, [or] by the exertion of any improper influence." *Id*. (quoting *Hutto v. Ross*, 429 U .S. 28, 30 (1976)). Courts also consider the defendant's age, education, the nature of any questioning, and the use of any physical punishment such as the deprivation of food or sleep to determine voluntariness. *See United States v. Haswood*, 350 F.3d 1024, 1027 (9th Cir. 2003) (*citing Schenckloth v. Bustamonte*, 412 U.S. 218, 226 (1973)). The standard of review does not change when the inquiry shifts from the voluntariness of an asserted *Miranda* waiver to the voluntariness of the confession under general Fifth Amendment principles. *See Collazo*, 940 F.2d at 415.

In the present case, the Court finds that Gaxiola-Burboa's *Miranda* rights were honored, he validly waived his rights, and that his admission was made voluntarily. Agent Perez credibly testified that he read Gaxiola-Burboa his rights in Spanish and that Gaxiola-Burboa stated that he understood his rights. The government also introduced into evidence the waiver form signed by Gaxiola-Burboa. In his testimony, Gaxiola-Burboa agreed that Agent Perez read his *Miranda* rights to him, that Gaxiola-Burboa understood his rights, and that he read and signed the waiver form indicating that he wished to waive his rights. The Court finds that the government proved by a preponderance of the evidence that Gaxiola-Burboa validly waived his rights.

Gaxiola-Burboa's claim that his confession was induced by Agent Perez was directly contradicted by the testimony of Agent Perez, who denied attempting to influence Gaxiola-Burboa. Agent Perez credibly denied that Gaxiola-Burboa asked whether he should waive his rights, asked about talking to an attorney or that Agent Perez told Gaxiola-Burboa it would be to his benefit to speak.[3]

Gaxiola-Burboa's testimony to the contrary was not credible. Although Gaxiola-Burboa claims that he agreed to speak to Agent Perez without an attorney present because Agent Perez advised him that he could help himself by talking, he also admits that he read and understood the *Miranda* form advising him that any statements he made to Agent Perez could be used against him in court and that he had a right to consult with an attorney before answering any questions. Similarly, although Gaxiola-Burboa testified that he asked Agent

---

[3] In the government's response and in Agent Perez's direct examination, the government argued that Agent Perez told Gaxiola-Burboa that it was completely up to him whether to waive his rights. Defendant argues that such a statement would most logically have been made in response to a question from Gaxiola-Burboa, such as "what should I do?"and therefore Agent Perez's denial of being asked such a question by Gaxiola-Burboa is not credible. This argument does not change the Court's analysis. First, on cross-examination, Agent Perez clarified that he did not make that exact statement to Gaxiola-Burboa, but believed such a statement was implied in the reading of the waiver of rights form. Second, even if Agent Perez's testimony was inconsistent, it would call into question his credibility, but would not be evidence of coercion.

Perez for advice because he was nervous and unfamiliar with the legal system, he also admitted that he had previously been arrested for illegal entry, knew that it was illegal to bring marijuana into the United States and knew that if he was caught he would be arrested and questioned.[4]

In sum, the government met its burden of proving voluntariness of the confession and the evidence did not support a finding that the defendant's will was overcome by a promise or inducement from Agent Perez. In fact, even if Gaxiola-Burboa's testimony that Agent Perez advised him to talk, was believed, Agent Perez's comments did not rise to the level of police influence held unconstitutional in *Collazo*, 940 F.2d at 419-20.

Finally, to the extent Gaxiola-Burboa argues that his waiver was not voluntary because he was a farm worker with minimum education and no understanding of the United States criminal justice system, that precise argument was rejected in *United States v. Bautista-Avila*, 6 F.3d 1360, 1365-66 (9th Cir. 1993).

## RECOMMENDATIONS

In view of the foregoing, it is recommended that, after its independent review of the record, the District Court DENY Defendant's Motion to Suppress Evidence. (Doc. No. 18.)

It is further recommended that, after its independent review of the record, the District Court DENY Defendant's Motion to Suppress Statement. (Doc. No. 19.)

The parties have **ten (10) days** to serve and file written objections to the Report and Recommendation. The parties are advised that any objections should be filed with the following caption: **CR 08-418-TUC-RCC.**

---

[4] Notably, in his Motion to Suppress Statement, Gaxiola-Burboa argues that his waiver was induced by Agent Perez's statement that "Gaxiola-Burboa would help himself by talking to the agent without an attorney." (Doc. No. 19, pg. 4.) However, Gaxiola-Burboa did not offer testimony to support that specific assertion at the hearing. Instead, Gaxiola-Burboa testified that he asked Agent Perez if he could give him some help and advice, and Agent Perez told him that the more Gaxiola-Burboa told him, the more Agent Perez would be able to help Gaxiola-Burboa. There was no testimony that Agent Perez and Gaxiola-Burboa discussed whether Gaxiola-Burboa should proceed without an attorney.

- 8 -

DATED this 27th day of August, 2008.

Jennifer C. Guerin
United States Magistrate Judge